Okay, the next case is number 16, 1426, Mid-Continent Nail Corporation against the United States. Mr. Yocas. Thank you, Your Honor. May it please the Court, my name is David Yocas on behalf of Mid-Continent Nail Corporation. Mid-Continent was the original petitioner in the any-dumping investigation that's at issue here on steel nails from the United Arab Emirates that was filed with a petition in March of 2011. Has Commerce shown any interest in repealing the original regulation since the Court of International Trade decision, or have they just agreed that they're going to stick with the original regulation? No, Commerce went through a notice and comment procedure that was entitled the non-application of the withdrawn regulation, and they gave notice and comment, went through a notice and comment proceeding, and formally continued not to apply the withdrawn regulation. So Commerce has not applied the withdrawn regulation in any case since the time it was So, but I'm confused. Is there an ongoing rulemaking now to apply APA procedures to repeal the regulation? There was a proceeding after the first Court of International Trade case that said there was a problem with the original APA procedure. Commerce went through another APA procedure to withdraw the regulation prospectively. That was in 2014, I believe. And what's the outcome of that? And so the outcome was that it was deemed that they would continue to have the regulation as withdrawn. So they haven't withdrawn the regulation? Yes, they have. They withdrew it. In a formal proceeding? In a formal proceeding. They went through another  Yes, it is. So the regulation is withdrawn? So the regulation is withdrawn. So we're just talking about the effect of the old regulation in the period here before the formal withdrawal? Well, there was a second, before the second withdrawal, the question was whether the first withdrawal was valid. I don't understand whether the formal APA proceeding. So we're talking just about the effect of this regulation over a limited period of time? That is correct. And what's that period of time? So the period of time would have been from when the regulation was originally withdrawn, which is December 2008. I would assume that would go up until 2014 when the second APA proceeding took place. How many cases are there like this one that involve the question of the effect before the formal withdrawal, the second proceeding? There have only been a few that have been raised in the Court of International Trade. The judges of the Court of International Trade have taken different positions on it. My understanding is that all the other cases, I'm not participating in them, my understanding is all the other cases wound up being resolved on other grounds. And so this is really the only case where it's really outcome determinative what the agency, whether the regulation is withdrawn or not. Okay, that's helpful. Thank you. So I believe the withdrawal of the regulation, I think also, needs to be put into the context of a lengthy proceeding, which is actually still ongoing, in which the Commerce Department has developed the alternative average-to-transaction methodology that was provided for for the first time in the 1994 Uruguay Round Agreements Act. So to implement the WTO proceeding, Commerce actually used to use the average-to-transaction methodology in all investigations and reviews. Beginning in 1994, to implement the WTO agreements, Commerce switched to using an average-to-average methodology in original investigations, with the exception that it could use the average-to-transaction methodology in some cases. And until 2007, it was hardly ever used. It was hardly even looked at. Commerce never actually found an occasion when it would actually use the average-to-transaction methodology. It was only in 2007 when Commerce began to implement a series of WTO decisions about zeroing, which I'm sure the Court has probably heard more about zeroing than it ever wanted to. In order to implement that, Commerce began to more actively use the average-to-transaction methodology. And in fact, this Court in the U.S. Steel case in 2010, when it first approved Commerce moving away from using zeroing and the average-to-average methodology, said, well, the reason Commerce always said it needed to do that was to deal with the problem of masked dumping, where some sales are dumped below cost or causing injury, and we don't want that to be offset by certain sales that are above fair value. We want to be able to focus on the problems of sales at less than fair value when that's appropriate to do so. And this Court said, well, Congress gave you the alternative average-to-transaction methodology to deal with that situation. So suppose we were to say, okay, we agree, just hypothetically, that we agree with the CIP that this regulation was not withdrawn and remained in effect. And what's left of your case, if we were to reach that conclusion? Well, even if it were still in effect, I guess I would say there are several things. First of all, one question is whether the failure to withdraw properly actually caused injury to the other side. Well, let's assume that we also concluded it's harmful error. Well, then in that case, so the regulation is in place. The regulation didn't impose any obligation on any private party. The regulation simply said, commerce shall normally do this. And on the remand, commerce interpreted the old regulation as requiring the result that it reached. Are you challenging that commerce determination? What we're challenging... Actually, what commerce said was, if we applied the old regulation in the way that we intended back in 1997 to do it, setting aside everything that we believe... No, but just tell me. Yes. I'm trying to understand. Correct. Yes, you are challenging commerce's determination with respect to the application of the regulation. Yes, because we believe that the regulation actually gave commerce the flexibility, given the changes... The regulation, as commerce originally envisioned it and described it in the preamble to the 1997 regulation, that's how commerce applied it. So you're saying they misapplied the regulation. I believe that they misapplied the regulation, and in particular, they misapplied it based on their own interpretation of the statute as they explain it in the remand determination itself. Well, we're reviewing commerce here, right? Right. Not the CIT. Right. Are we reviewing commerce's decision, which it made under protest, or commerce's view of what the law should be? We're reviewing, even though it was under protest, that's their decision, which we review. That is correct. However, the decision itself says, we disagree with the statutory interpretation on which we are making this decision that we are making. But we have to disregard that, because that's reasoning, whereas they made a decision... Correct. And we have to review the decision. That's correct. And I believe that decision is arbitrary and capricious and contrary to law, because it is contrary to commerce's interpretation of the statute and the requirements of the statute, which is deserving of Chevron deference. Help me. I'm not following what you're saying. Correct. So on the remand, they say, OK, we're stuck with the old regulation. We're going to apply the old regulation. And applying the old regulation, we're not going to apply the average transaction method beyond the targeted transactions, right? Well, but the regulation didn't say that. No, no, I understand. Correct. That's what they did, right? Correct. So where's the error in that? The error in that is that the agency itself believes that... So in the regulation itself, it says commerce shall normally apply the average transaction method only to this limited group of sales. But there may be times when it's necessary in order to address mass dumping. Right. And so commerce said, this is a case where it is necessary to apply it more broadly to address mass dumping. This is a case where it is necessary to do that. They said that on the remand? They said that in the remand. But what they said was... Wait, show me where they said that in the remand. I don't understand them to have said that applying the regulation led them to apply the average transaction test to all sales. They... You wouldn't be here if they'd done that. That's correct. I believe what they said was, we explained at some length why the statute required them to apply it more broadly. And commerce stated that it agreed with that. And I'm looking here and I'm looking at the wrong place now. So this would be in the appendix now. We would be beginning... So page 12 of the remand beginning at page 94 of the appendix. So they state that they... It begins under the department's position. It says... Page 94? That's right. So page 94 of the appendix. We agree in principle with the conceptual framework that the petitioner advocates. The rationale that we said is, you say even in the original regulation, even in the preamble to the original regulation, there may be cases where we need to apply the average transaction method more broadly. There may be cases. And we said, well, this is one of those cases. You said it needs to be done in cases where the application of the method more broadly is necessary to effectuate the statutory intent. And you, commerce, have said in your withdrawal of the regulation that you need to do that in certain cases. You said in the original final determination here that this is one of those cases. And what they're saying here is that the... And this would now be on page 14, page 96 of the appendix. The first full paragraph at the bottom of the page here. Or actually, if you go back to the final sentence of the previous paragraph. With the experience that the department has gained, the department found that the regulation restricted its ability to address mass dumping and that it needed to apply the methodology more broadly. That was the rationale. That's saying we like the old regulation. That's not saying that under the old regulation that we'd reach a different result. Right. So basically, if commerce had applied the old regulation under its old understanding of what the word normally means, in essence, I think what commerce should have done if they were forced to apply the old regulation is to reinterpret the word normally in light of everything that had developed, all the developments in commerce's practice in the five years since they had repealed the regulation. And what they said was, we agree with you that those are all relevant considerations. However, the department, the court, found the withdrawal was there. Therefore, the department must satisfy a different standard as articulated in the 1997 regulations, i.e., that this pattern be extensive as described in the preamble. So we're going back to the 1997 commerce understanding of the regulation, not the text of the regulation. And that's where we feel that the problem is. Perhaps, if you have other questions, I can address them later, but perhaps I should do that in rebuttal. Yes, we'll save you rebuttal time. Thank you. Good. Thank you, Mr. Yackas. Mr. House. May it please the Court, Michael House on behalf of Appellee Precision Fasteners. Do you agree that this is the only case where the repeal has any significance? Your Honor, there was a limited time period, we agree, where the unlawful revocation occurred. What's the answer to my question? Is this the only remaining case where it makes a difference? It's my... If you don't know, you can say, I don't know. We know that there is one case that's in the middle of a remand proceeding before the CIT. This is the Beijing Tianhai case in which the harmless air issue was raised. That case has yet to reach this court. So there's one other case. It may, it possibly may reach this court. Correct. The revocation of this substantive rule in December 2008 was an utter failure to abide by the APA's requirement of prior notice and opportunity for comment. The Commerce Department's failure to do this thwarted the very basic reason for these APA requirements. That is, to subject its substantive rulemaking of which a revocation is to public debate. And also, to form a record of its reasons for promulgating the regulation that it is promulgating. And also, to assure fairness to the parties. The D.C. Circuit and other circuits have consistently emphasized the purpose of APA notice and comment requirements. The failure to do so here thwarted all of that. And as a result, we have a revocation that occurred in December 2008 that was unlawful. What about the harmless error issue? Your Honor, we believe that the cases overwhelmingly show that harmless error must be construed very narrowly, particularly in a rulemaking context, which we have here. And also... We didn't make any effort to show that the case would have come out differently if proper notice had been given, right? We think the CIT was correct in this case and in the several other cases addressing this issue and concluding that it was uncertain whether the outcome would have been the same if proper notice and comment had been provided. And that's our position as well. The judge, the CIT, concluded that no one could really know what the outcome would be. Notice and opportunity was not provided. So we think that there certainly was error that was not harmless. And in the context of those circuit court cases that address harmless error in a rulemaking context, it's clear that the court must look at not only the outcome, the potential for a different outcome, but also the procedural aspects of the rulemaking that was followed. The cases seem to suggest that if it's a really bad error, we're not going to apply harmless error analysis. But if it's not a really bad error, maybe we are. Is that a fair statement? Well, perhaps really bad could be termed technical. We've seen that word used in some of these cases. In our view, this is not a very satisfactory test. Well, in our view, we think this case isn't difficult to come to the conclusion that this was a really bad or certainly a fundamental error on the part of the agency because the very reason that Commerce gave in its revocation, the only indication we have for why it did this in the revocation notice in trying to justify good cause, it said that we think that our current regulation may impede the proper relief to domestic industries. So the only indication we have is that statement by the Commerce Department not providing any opportunity for notice and yet the Department did not subject that question to debate, did not subject that question to comment by interested parties, did not pursue that question, yet instead just moved immediately to revoke a substantive regulation. And we think however you characterize that on the really bad to not so bad scale, there's no question in our mind that that is a fundamental harmful error because it goes right to the heart of what APA notice and prior notice and opportunity for comment is all about. So if we agree with the appellant as to the intricacies of this regulation, what are the consequences for this particular case for your position? Well, Your Honor, in this case on remand the CIT ordered the agency to apply the unlawfully withdrawn regulation and the agency did so. And we saw... The answer is if the regulation was repealed you lose, right? I'm sorry... If the regulation was repealed you lose. We don't believe so, Your Honor. Why not? Because the CIT has determined how targeted dumping is to be calculated  and the remaining regulations that were not repealed here, Your Honor, also do not provide... I don't understand what you're saying. How can you... The Commerce Department originally said the regulation was repealed and with the regulation repealed we find that we should apply this methodology to all sales. Well, Your Honor... So, if the regulation, if the CIT was wrong and the regulation was in fact repealed how is it that you don't lose? Well, Your Honor, in our targeted dumping methodology which the CIT did not reach the CIT put those aside and focused only on the one argument we raised about the invalidity of the revocation. And so, if the Court were to reverse the CIT we don't necessarily lose. We think there are meritorious arguments that we did present to the CIT which were stayed which go to the heart of the methodology that the department applied in the targeted dumping analysis. So, the CIT hasn't had a chance to visit those arguments and issue a decision. So, you would go back to where you were several years ago? I suppose so, Your Honor, yes. But we don't think that that's the right outcome here given the clear record of an agency revoking a substantive regulation without prior notice and opportunity for comment. And for the reasons that we discussed in our brief and here, we don't think that there's any merit to a claim that this was simply harmless error. And furthermore, we also think the record clearly shows that the rounds of comments that the agency conducted in 2007 and 2008 don't satisfy the procedure requirement of notice and comment on the withdrawal of this substantive regulation. Commerce never mentioned even hinted that it was proposing changing withdrawing and modifying its regulations during those 2007 and 2008 rounds. Indeed, if you look in the appendix at what Commerce was inviting parties to do was to comment on its analytical framework within the existing context of the statute and the existing regulations. So no party engaged in that comment process was put on notice that a modification to Commerce's regulations was even contemplated. So, in the end, we think that there's a clear case of failure to provide proper notice. And finally... On the harmless point, doesn't the fact that Commerce ultimately did engage in a formal proceeding and repeal this regulation show that the same thing would have happened the first time? And, in our view, and we think the correct decision is that  unlawfulness of that withdrawal meant that that regulation remained in effect until the 2014... Yeah, but I don't think you're addressing my question. My question is, okay, so why doesn't the fact that that is what happened when they applied proper procedures show that that would have been what happened if they applied proper procedures in the first place? Because those parties affected by cases that occurred from the moment that they unlawfully withdrew the regulation until that later point were harmed by an improper process that happened   place. So my question is, is there to believe that if they followed the proper processes the first time around that they would have reached a cure or declare valid what was an improper withdrawal revocation in the first place? The circuit court cases we've cited in our brief talk about the fact that this would eviscerate the whole purpose of notice and comment rule making to allow an agency to withdraw a reg without any notice and later decide now we're going to do it the right way and take notice and comment and go through the procedures that's simply not a cure for what was wrong in the first place and we believe that does go to the harmless error question we think that in December 2008 when they took this action it was not certain what would be the outcome with a proper notice and comment proceeding the question they never presented to the parties was we have a concern about this particular regulation we're proposing withdrawing it we want your input and there was no substantive debate it is not harmless error to conclude that the failure to do that affected in a non-harmless way the proceedings that fell subject to that regulation in the subsequent period your honor that concludes our  unless you have any other questions thank you thank you thank you your honor if I could just briefly address a couple of points the issue that no one could have predicted in 2008 what the outcome would have been is I think I think a bit difficult to believe for a couple of reasons one is as we look at this and actually the citations are in precision brief page 29 footnote 7 has the citations to the 2013 proposal and 2014 final with final non application of the withdrawn regulation but even more is that what by withdrawing the regulation commerce and this is in the context of a practice that almost every other aspect of our practice and in withdrawing the regulation commerce said we are not necessarily changing our practice we are simply untying our hands so we can make a case by case determination in the future if we need to and in 2010 they did exactly that they stated in the BAGS case they said the preliminary determination of the BAGS case they said we are still considering all of the comments we are adopting a new practice that is inconsistent with the old regulation we are going to continue to apply that new practice that practice was applied in this case precision and Dubai Wire made arguments in this case that this new practice was a bad idea and inconsistent with the statute and commerce rejected those arguments that is pages 15 to 18 of the decision memorandum or pages 77 to 80 of the appendix so it's clear that even if commerce had followed the correct procedure if in December 2008 instead of saying this is a final rule that applies in 30 days they said this is a proposed rule and then in 2010 when they published in the Federal Register their new practice they said all right from now on this is our new practice we're putting into effect the withdrawal of the old rule nothing in this case would have been changed all of that happened a year before we filed our petition and so it's clear what would have happened if in fact commerce had followed the standard 30 days notice and comment and not found that it had good cause to waive it unless the court has other questions that's all I have thank you the case is taken under submission and that concludes the argued cases for this morning thank you all of